UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
BOGOPA SERVICE CORP.,

                                               Plaintiff,

     -against-

3370 HALAL FOOD BAZAAR INC. D/B/A
HALAL FOOD BAZAAR,

                                               Defendant.
----------------------------------------------------------------------X

For Online Publication Only

**ORDER**
20-CV-6034 (JMA) (AYS)

**AZRACK, United States District Judge:**

      Before the Court is Plaintiff Bogopa Service Corp.'s ("Bogopa" or "Plaintiff"), motion for attorney fees against 3370 Halal Food Bazaar ("Halal" or "Defendant"), to recover attorneys' fees under the Lanham Act, which Bogopa estimates to be at least $110,000 or more. For the reasons stated herein, Plaintiff's motion is DENIED.

## I. BACKGROUND

      Bogopa is a New York-based corporation that operates supermarkets under its registered trademarks FOOD BAZAAR, FARMERS MARKET FOOD BAZAAR SUPERMARKET. (Complaint ("Compl.") ECF No. 1; ECF No. 4.)  On or about November 2, 2020, Bogopa learned that Halal, another New York-based corporation, planned to open a retail supermarket near the location of its Westbury store under the name Halal FOOD BAZAAR. (Compl. ¶ 26.) On November 2, 2020, Bogopa's counsel sent a demand letter objecting to Halal's use of the mark FOOD BAZAAR in the store name, associated website, and domain, and on store signage. (Compl. ¶ 34.)

      On November 9, 2020, Bogopa's counsel reportedly contacted Halal and spoke with a store manager who confirmed receipt of the November 2, 2020 demand letter and represented to Bogopa

that Halal would respond to its demands no later than November 13, 2020.  (Compl. ¶ 36.)  However, Bogopa states that it did not receive a response.  (Compl. ¶ 37.)  On November 16, 2020, Bogopa issued Halal another demand letter threatening litigation.  (Compl. ¶ 37.)

On December 2, 2020, Bogopa's counsel Douglas A. Miro, Esq., ("Mr. Miro") was contacted by Shaun K. Hogan, Esq., ("Mr. Hogan") who explained that Halal was in the process of retaining his firm as counsel.  (Compl. ¶ 37; (Declaration of Michael Cassell, ("Cassell Decl.") Ex. B., ECF No. 28-8.)  Mr. Hogan requested that Bogopa delay legal action in order to explore resolving the matter.  (Compl. ¶ 37.)  Mr. Miro responded to Mr. Hogan that Bogopa was prepared to take "aggressive legal action," but would hold off from doing so if Halal agreed, no later than December 4, 2020, to change the name of its store and pay Bogopa for the attorney's fees and other damages it had incurred as a result of Halal's "willful acts." (Compl. ¶¶ 39-40; Cassell Decl. Ex. B.)  Bogopa states it then received no receive further communications from Halal or Mr. Hogan up to the filing of the Complaint.  (Compl. ¶¶ 39-40.)

On December 10, 2021, Bogopa initiated this instant action against Halal bringing federal trademark infringement, unfair competition, and false designation of origin claims under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and the common law; and unfair and deceptive trade practices under New York state law.  (Compl. ¶ 9.)

On January 4, 2021, Bogopa filed, under seal, an application for a temporary restraining order and preliminary injunction to enjoin Halal's use of the FOOD BAZAAR mark.  ("TRO/PI," ECF No. 7.)  On January 7, 2021, after Halal had not appeared, answered, or otherwise responded to the Complaint or the TRO/PI, the Court directed Halal to obtain counsel and file a notice of appearance.  (Electronic Scheduling Order dated 01/07/2021.)  The Court also directed the parties

to appear for a status conference regarding the TRO/PI. (Electronic Scheduling Order dated 01/07/2021.)

On January 11, 2021, Brian A. Comack, Esq. ("Mr. Comack") filed a notice of appearance on behalf of Bogopa. (ECF No. 10.) On January 12, 2021, Michael D. Cassell, Esq. ("Mr. Cassell") filed a notice of appearance on behalf of Halal. (ECF No. 12.) On January 14, the Court held a status conference in an effort to resolve the case and issued an order that Halal respond to the Complaint no later than January 19, 2021. (Electronic Order dated 01/14/2021.)

On January 15, 2021, with the Court's encouragement, the parties agreed to mediation. (Cassell Decl. ¶ 25.) On January 16, 2021 the Court adjourned all pending deadlines sine die. (Electronic Order dated 01/16/2021.) On January 26, 2021, Bogopa filed a permanent injunction on consent, which required Halal to comply with certain requirements. Specifically, Halal was required to cease its use of any word, name, symbol, device, or combination thereof that is confusingly similar to the FOOD BAZAAR mark, including without limitation the "Halal FOOD BAZAAR" name and mark no later than January 29, 2021. (Permanent Injunction on Consent ("PI"), ECF Nos. 15, 16.) The PI was so ordered by the Court on January 26, 2021. (ECF No. 16.)

On February 4, 2021, Bogopa sought an expedited pre-motion conference to seek permission to move for an order holding Halal in civil contempt of the Permanent Injunction. (ECF No. 17.) Bogopa stated that Halal had not fully complied with the Permanent Injunction, because, among other things, Halal had operated its website three (3) days past the deadline of January 29, 2021 set out in the Permanent Injunction. On February 11, 2020, the Court held a subsequent conference to explore settlement, after which the parties requested to stay the matter. Between

3

February 24, 2020 and March 10, 2021, the parties moved jointly to continue the stay the action in order to explore settlement. (ECF Nos. 20, 21.)

On March 24, 2021, the parties represented to the Court that they had reached a settlement agreement in principle. (ECF No. 22.) In the joint letter to the Court, the parties filed a proposed Final Judgment On Consent to memorialize this agreement and advised that the only remaining issue was Bogopa's claim for recovery of its attorneys' fees. (ECF No. 23.) On May 4, 2021, the Court entered the Final Judgment on Consent. (See generally Final Judgment on Consent ("Consent Judgment"), ECF No. 24.) Pursuant to the Consent Judgment, on June 29, 2021, Bogopa filed the motion currently before the Court.

## I.   DISCUSSION

Bogopa claims it is entitled to, at a minimum, $110,000 in attorneys' fees in connection with bringing this case. (Pl's Mem. at 19; see also Declaration of Brian A. Comack ("Second Comack Decl.") at ¶ 8, ECF No. 28-2.) Bogopa argues that, under the Lanham Act, it is the prevailing party, and that because this is an "exceptional" case within the meaning of the statute, an award of attorneys' fees is warranted. (Pl's Mem. at 7.) The Court disagrees. For the reasons explained below, the Court does not deem this to be an exceptional case that would warrant consideration of an award of attorney's fees under 15 U.S.C. § 1117.

**A. Lanham Act**

15 U.S.C. § 1117 provides, in relevant part, that a court "may award reasonable attorney fees to the prevailing party" for claims brought under the Lanham Act in "exceptional cases." 15 U.S.C. § 1117(a).

4

1. **Bogopa is the prevailing party.**

As a threshold matter, the Court recognizes Bogopa is a "prevailing party." See 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.") Here the parties stipulated to a final judgment on consent, which determined liability largely in favor of Bogopa. (See Consent Judgment ¶ 13, "Judgement as to liability is entered in favor of Bogopa on its First, Second, Third, Fourth, and Fifth Claims for Relief in the Complaint […]".) The parties do not contest this point. (See, generally, Def's Opp'n, ECF No. 28-5.)

2. **This is not an "exceptional" case.**

Next, the Court addresses the cardinal question: whether this is an "exceptional" case under the Lanham Act. In considering the totality of the circumstances, the Court finds that it is not.

The Supreme Court has explained that there is "no precise rule or formula" for determining whether a case is "exceptional" under the Lanham Act. See Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014). Instead, the statute calls for the exercise of equitable discretion. Smart Study Co. v. B+Baby Store, No. 20-CV-7889, 2021 WL 1973300 at *3 (S.D.N.Y. May 18, 2021) (citing Octane Fitness at 554.) Courts must conduct a "case-by-case exercise of their discretion, considering the totality of the circumstances." Id.

An "exceptional" case "is one that stands out from others with respect to the substantive strength of the party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Id. at 553-54. Relevant factors include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Id. at 554 n.6 (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.1955 (1994)). This list of factors is not exclusive. 4 Pillar Dynasty LLC v. New York & Co.,

Inc., 933 F.3d 202, 210 (2d Cir. 2019) (holding that the equitable factors "include, but are not limited to," those enumerated).

Ultimately, "[w]hether to award attorney fees, and the amount of any award, are matters that fall within the discretion of the district court." Goodheart Clothing Co. v. Laura Goodman Enterprises, Inc., 962 F.2d 268, 272 (2d Cir. 1992). Therefore, even in an exceptional case, the court has discretion to deny a fee award. Fresh Del Monte Produce Inc. v. Del Monte Foods Co., 933 F. Supp. 2d 655, 665 (S.D.N.Y. 2013) ("[t]he award of attorneys' fees even in an exceptional case is discretionary"); see also 15 U.S.C. § 1117(a) (providing that courts "may," not shall, award fees in exceptional cases); Brown v. Stackler, 612 F.2d 1057, 1059 (7th Cir. 1980) ("'may' sometimes means 'won't'") Graduation Sols., LLC v. Acadima, LLC, No. 17-CV-1342, 2020 WL 1528082, at *1 (D. Conn. Mar. 30, 2020) (declining to award attorneys' fees in part because plaintiff did not demonstrate substantial litigation misconduct took place).

Bogopa puts forth the following arguments in support of its claim that this case is exceptional, and that it is entitled to attorneys' fees: (1) Halal was unreasonable to not settle this matter pre-suit, (2) Halal then litigated in a "wholly unreasonable" manner, (3) the Consent Judgment establishes Halal conceded to "willful infringement," and (4) an award of attorneys' fees is necessary for deterrence. The Court addresses each argument in turn.

### i. Pre-Suit Conduct

Bogopa principally relies on Halal's pre-suit conduct to support its argument for attorneys' fees. (See Pl's Mem. at 8-10, 17-18.) Specifically, Bogopa frames Halal's lack of an immediate response to its cease-and-desist letters and the refusal of Halal's counsel to accept pre-litigation settlement terms as unreasonable. (See Pl's Mem. at 8-10, 15)

However, the Court does not find that Halal's pre-suit conduct qualifies as objectively unreasonable. "Objective unreasonableness is generally used to describe positions that have no legal or factual support." Stephen T. Greenberg, M.D., P.C. v. Perfect Body Image, LLC, No. 17-CV-5807, 2020 WL 6146617, at *3 (E.D.N.Y. Oct. 20, 2020), aff'd, No. 20-3912-CV, 2022 WL 275378 (2d Cir. Jan. 31, 2022).

In the context of pre-suit behavior, courts have typically only awarded attorney fees where a party was openly derelict or defiant in its infringement. See, e.g., Pfizer Inc. v. Sachs, 652 F. Supp. 2d 512, 527 (S.D.N.Y. 2009) (awarding attorneys' fees where defendants failed to comply with two cease-and-desist letters, did not seek the advice of counsel, and instead threatened plaintiff with continued infringement.); Microban Prod. Co. v. API Indus., Inc., No. 14-CV-41, 2014 WL 1856471, at *8 (S.D.N.Y. May 8, 2014) (awarding fees where a party disregarded numerous requests to cease its infringement "yet [] persisted for more than 10 months to do so anyway.")

Here, Halal did not completely disregard Bogopa's cease-and-desist letters. (Pl's Mem. at 8-9.) Bogopa issued its first demand letter to Halal on November 2, 2020. (Declaration of Brian A. Comack ("First Comack Decl.") ¶¶ 8-9, ECF No. 7-16.) The demand letter set a deadline of two days for compliance. (First Comack Decl., Ex. 1, ECF No. 7-17.) Bogopa, by its own admission, reached Halal on its second attempt, on November 9, 2020. (First Comack Decl. ¶¶ 8-9.) The Halal employee that Bogopa's counsel spoke with confirmed receipt of the first demand letter and represented that it was attending to the matter. (First Comack Decl. ¶¶ 8-9.) Within a matter of weeks, Halal retained counsel who then attempted to negotiate a resolution with Bogopa before this suit was commenced. (Cassell Decl. ¶¶ 7-9.)

Bogopa's argument here relies on Brighton Collectibles, LLC v. Believe Prod., Inc., No. 15-CV-00579, 2018 WL 1381894, at *2 (C.D. Cal. Mar. 15, 2018). This district court decision from outside the Second Circuit is distinguishable and unpersuasive. Unlike Brighton Collectibles, this is not case where defendant acknowledged receipt of a cease-and-desist letter but blew it off arguing that it "it was too late" and continued business as usual. See Brighton Collectibles, LLC 2018 WL 1381894, at *2 (finding it was "objectively unreasonable" for defendant to claim he was "too busy" to respond to cease-and-desist letter only to continue shipping 97,000 products with the infringing marks a month later).

Importantly, Bogopa overlooks the fact that its offers of "amicable resolution" required that Halal—within two days—"immediately" "agree to reimburse Bogopa for its actual counsel fees;" "provide proof of gross sales;" "agree to pay Bogopa any wrongful profits;" among other demands by written assurance "within two (2) days" time. (Cassell Decl. Ex. A; First Comack Decl., Ex. 1.) Bogopa reiterated these demands in subsequent correspondence and represented that the attorney's fees were likely in excess of $50,000 at the time. (Cassell Decl. ¶ 16-17.) Halal, understandably, found these settlement conditions to be a "complete non-starter" and thus declined to settle on those terms. (Cassell Decl. ¶ 16-17.) Under all the circumstances, the Court does not find Halal's position and conduct was unreasonable, and Bogopa identifies no relevant authority to the contrary.

### ii. Conduct During Litigation

Also unavailing is Bogopa's insistence that Halal's conduct, during this short-lived litigation, merits attorneys' fees. The Court is not persuaded that Halal's initial delay in responding to the Complaint, or the TRO/PI is indicative of an exceptional case. (Pl's Mem. at 10, 17.) See, e.g, Antetokounmpo v. Costantino, 21-CV-2198, 2021 WL 5916512 at *7 (S.D.N.Y. Dec. 15, 2021)

8

(collecting cases finding that a defendant's default alone is insufficient to deem this an "exceptional" case); cf. Experience Hendrix, L.L.C. v. Pitsicalis, No. 17-CV-1727, 2020 WL 3564485, at *10 (S.D.N.Y. July 1, 2020) (finding bad faith where after "two years of stark, repeated failures . . . to engage in the discovery process, culminating in statements during a recent deposition in which the party indicated that he continues to have no interest in or intention to comply with required pretrial discovery."); Univ. Instruments Corp. v. Micro Sys. Eng'g, Inc., 2018 WL 748871, at *2 (N.D.N.Y. Feb. 7, 2018) (granting fees where party "litigated this case in an unreasonable manner that exacerbated the issues to be resolved and the expenses incurred by all parties.")

Bogopa cannot point to any "substantial litigation misconduct [that] occurred … to make this case 'stand out' as exceptional under the Octane Fitness standard." Stephen T. Greenberg, M.D., P.C. v. Perfect Body Image, LLC, No. 17-CV-5807, 2020 WL 6146617, at *3 (E.D.N.Y. Oct. 20, 2020), aff'd, No. 20-3912-CV, 2022 WL 275378 (2d Cir. Jan. 31, 2022); see also Hockeyline, Inc. v. STATS LLC, No. 13-CV-1446, 2017 WL 1743022, at *5 (S.D.N.Y. Apr. 27, 2017) ("[M]ost post-Octane cases awarding fees continue to involve substantial litigation misconduct.").

Bogopa's contention that Halal's conduct in promptly settling this case somehow reflects "the very essence of unreasonable litigation conduct," (Pl's Mem. at 16), is *bizarre* to say the least. Cf. Bano v. Union Carbide Corp., 273 F.3d 120, 129 (2d Cir. 2001) ("It is axiomatic that the law encourages settlement of disputes.").

Bogopa's cited cases are, again, misplaced. For example, Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 112 (2d Cir. 2012), was a complex matter involving a civil lawsuit and parallel criminal trial, which involved considerable discovery and motion practice. That case lasted for years compared to the few months in which this case resolved itself.

9

### iii. Willfulness

Finally, the Court agrees with Halal that Bogopa cannot rely on the Consent Judgment to presume that Halal's infringement was "willful and deliberate." The terms of the Consent Judgment expressly carved out any consideration of Bogopa's entitlement to attorneys' fees and left that determination to this Court.

Paragraph 13 of the Consent Judgment provides, that "[j]udgement as to liability is entered in favor of Bogopa on its First, Second, Third, Fourth, and Fifth Claims for Relief in the Complaint (D.I. 1), however, Bogopa's ability to recover damages and attorneys' fees is limited as provided for in Paragraphs 12, 14, and 15 herein. Bogopa's Sixth Claim for Relief is dismissed without prejudice." (Consent Judgment ¶ 13.) (emphasis added)

In particular, Paragraph 14 goes on to state that, "[t]he sole remaining issue to be decided by the Court in this case is whether Bogopa is entitled to recover any and all of its attorneys' fees." (Consent Judgment ¶ 14.) Paragraph 12 dismissed Bogopa's claim(s) for a monetary recovery without prejudice while Paragraph 15 provided deadlines for this Motion. (Consent Judgment ¶¶ 12,15.)

Bogopa's argument is without merit and the case relied on is distinguishable. (Pl's Reply at 9.) In E. Mishan & Sons, Inc. v. Novel Brands LLC, 2020 WL 9815178 (S.D.N.Y. Feb. 13, 2020), the parties entered into a Final Judgment on Consent, where attorneys' fees were already agreed to and presumed. Id. at *2. There, the Court was tasked with determining the appropriate amount of attorney fees, not the threshold question presented here, of whether the plaintiff was entitled to attorneys' fees in the first instance.

More generally, Bogopa has not demonstrated that this infringement is willful to the degree that would merit an award of attorney fees. As the Court previously observed, there was no

reckless disregard, Halal's owner countered that it believed it was not infringing, because the use of "bazaar" was "extremely common" in his ethnic community. (Cassell Decl. ¶ 21.) In any event, "willful infringement by itself does not entitle a plaintiff to recover attorney's fees." BBK Tobacco & Foods, LLP v. Galaxy VI Corp., 408 F. Supp. 3d 508, 522 (S.D.N.Y. 2019) (citing 4 Pillar Dynasty, 933 F.3d at 216); see also, Graduation Solutions, *2 ("Octane Fitness establishes no presumption ... that cases involving willful infringement are necessarily "exceptional.") Even assuming that the infringement here was willful, the Court ultimately finds that a fee award is not warranted here.

### iv.  Compensation and Deterrence

Upon review of the record, the Court finds no evidence that Halal engaged in any misconduct in the course of the litigation. Halal resolved the case shortly after the filing of the complaint and TRO/PI motion. Accordingly, the Court finds the considerations of compensation and deterrence do not favor an additional fee award.

## II.  CONCLUSION

After considering the totality of the circumstances, the Court finds that Bogopa has not established that this is an exceptional case. Moreover, even assuming arguendo that this case qualifies as "exceptional," the Court would, in discretion, deny fees here. For the foregoing reasons, Plaintiff's motion for attorney fees is DENIED.

**SO ORDERED.**

Dated: March 16, 2022
      Central Islip, New York

                                                  /s/   (JMA)
                                        JOAN M. AZRACK
                                        UNITED STATES DISTRICT JUDGE